Next case on the calendar is Lamberty v. Connecticut State Police Union, and we have Mr. Young arguing for the appellant with two minutes reserved for rebuttal. I'm trying to open my camera, Your Honor. I'm sorry. Okay. There we go. Perfect. Thank you. Thank you, Judge. Good morning, and may it please the Court. I'm James Young, and I represent four current or former Connecticut State Police troopers, Mark Lamberty, Joseph Mercer, Carson Conow, and Colin Conow, plaintiffs' appellants in this appeal. I'd first like to touch briefly on the issue of the district court's finding that the case was moot in light of defendants' undertakings in the wake of the Supreme Court's landmark decision in Janus. While the troopers conceded that stopping fee seizures mooted their claim for injunctive relief, we respectfully submit that the declaratory relief claim survives for troopers Carson and Colin Conow. Messrs. Lamberty and Mercer have retired. While the district court found the case moot based upon the representations of public... Mr. Young, just before you get to that, I just want to address from the 28J letters, I'm concerned of whether we even have jurisdiction over that particular argument. It's pretty clear, I think, that the rule is, even if assuming there needed to be a separate judgment, that if there's not a separate judgment, the 30-day period to appeal begins 150 days later by rule under 58B2B, and I think you can see that if that rule applies, certainly that portion of your appeal is untimely, so I don't understand why that doesn't preclude you from even making this particular argument regarding the mootness issue. I believe it does not, your honor, because of a couple of factors. First of all, the other side never moved for summary judgment. This was a summary judgment motion that was pursued by the plaintiff. That's not the key issue. The key issue is whether the case is over. I don't think you would question the fact that when the district court issued that opinion, the case, the district court said in the opinion, even though it was a summary judgment motion, there's nothing left for me to do. It set a schedule for attorney's fees and administratively closed the case, so I don't think you could say, no matter what the procedural posture was, the district court, other than the fee issue, which the law is clear, a fee issue isn't enough to, unless there's a motion to extend time under rule 58E, that the fact that there's a fee schedule, you know, schedule for the fee application doesn't stop the clock. Well, I believe the court did it sua sponte, though, your honor, by contemporaneously issuing the order on the fee schedule with its order on the summary. You're saying when a judge, even if a judge ends the case, if they set a fee schedule, a fee motion schedule, they are implicitly extending the time to appeal? That's what you're arguing? The court didn't do exactly that, Judge Bianco. The court also reserved, allowed us, the plaintiffs, to come back if we determined that the refunds that were made were inadequate. Now, the defendants did not put enough evidence in the record to allow us to make that determination at the time of the oral argument, and under these circumstances, we believe that that reservation of authority over the case, and coupled with the failure of the clerk to do what the judge below directed him to, to administratively close the case. The judge says in ending a case, you can reopen it if X, Y, and Z happens. You're saying that that indefinitely tolls the time to appeal? I don't, I'm not saying indefinitely, Judge Bianco. I'm saying certainly it tolls the time until the court reaches its determination on the feeable. However, if the court determines that our appeal from the denial, appeal from the finding of mootness is untimely, and I'll be honest with you, Your Honor, that's a conclusion I came to after looking at the case law in this circuit, because I hadn't, frankly, I hadn't intended to appeal from that ruling, but it came up in my research on the attorney's fees issue that the judge had, the case had not formally been closed, and in looking at the docket sheet. Well, counsel, counsel, Judge Walker, I think your last statement is interesting that the case had not formally been closed. Indeed, the complaint was never dismissed. The motion for summary judgment by the plaintiffs was denied, but a motion in favor of the state was never granted. They never, I don't know if they, I mean, there was no decision, no judgment, because there was no decision that entered judgment as a motion to dismiss the complaint would have had the judge done it. The defendants never moved to have the case dismissed. That's exactly right, Judge Walker. So as far as I can tell, if there's no, if the case was never dismissed and the judge kept, as he says here, the plaintiff's motion for summary judgment is denied without prejudice to renewal in the event that there's an effort to reintroduce agency fees and to the extent the plaintiffs have not been adequately reimbursed for past agency service already imposed, so there can be a renewal under those circumstances, and then the clerk was respectfully directed to administratively close the case, and we have held, I believe, that an administrative closure is not, has nothing to do with the merits, has nothing to do with the disposition of the actual case, that there has to be a judgment, and there has to be, it may or may not be a separate, on a separate piece of paper which can affect the timing of the of the appeal, but here, certainly one way to look at this is that that district court proceeding is still extant. Am I missing anything here? No, I don't think so, Judge Walker. In fact, I think you raised something that I missed in answering Judge Gallant. And if that's the case, if the case is still going, there really wouldn't be an appeal from there because there's been no final judgment, so we wouldn't have jurisdiction for that reason. I'm not sure that's true, Judge Walker. No, you feel that way, and both parties have sort of treated the case as having ended, but as we know, the parties themselves can't confer jurisdiction if there isn't any. Of course not, Your Honor, but the defendant can, defendants can waive the final judgment rule can be waived by the defendants, I believe, under this circuit's decision, if they don't raise the issue on the appeal. They have not raised the argument that the case is still open in the district court. Excuse me, I always thought that jurisdiction was something that the court really had to inquire into itself, and that the parties really couldn't confer jurisdiction or waive aspects of the case that might confer jurisdiction. We had to examine whether we had jurisdiction. Now, that doesn't mean we don't have jurisdiction over the fee award, the fee request, the denial of fee. That was timely, but that's a separate award. That was made a year later, and to that, and to the extent that that award is a, and fee awards can be made during the middle of litigation, of course. You can have partial fees recovered in the midst of the litigation, so we would have, I would think we would have jurisdiction to examine that question, and to the extent that that question depended upon the findings in the, what arguably is still an extant civil case, the other, the main case, then those, that aspect of the case, the court's findings and so forth, could be relevant on the fee question. I'm sorry, Judge Walker, I didn't mean to interrupt you. I think the problem that that would present, Judge Walker, is that that would make this case into the flying Dutchman, forever pending below, and frankly, it already seems to have been forever pending, when the court has made clear that it's ultimate determination. And if my, and I'm, you know, I wasn't the original judge signed into this case, but I came in a little later, and, but if my, if the points that I'm making have any merit, then I'm not sure that any, that the judge could have entered a judgment at any time on the motion of the parties. But he, but he never did that. And in fact, the order, the order that he left, it's not clear that it ended the case, because he, he said the parties can return any time to, to, to, to make sure that if they, well, let's say they can move for attorney's fees, right? And if they haven't been adequately reimbursed for past agency fees, I'm here, you can walk in and I'll change it. Now, that sounds to me like it's more in the nature of almost a consent decree or something of that sort. I mean, it's, it's, it's ongoing jurisdiction. And the judge is not saying you have to file a new complaint or whatever you want to do. And it's not talking about awarding attorney's fees, which are late later on. This is the judgment in the case, which was, you know, the actual, the actual past agency fees. He wants to maintain supervision of that. So I had a slightly different understanding. And I thought that the, that the defendants had moved to dismiss the case on the grounds of mootness, and that the plaintiffs had opposed that argument, move for summary judgment to dismiss the case. And I thought that the, that the statute was still on the books of Connecticut, and a reasonable possibility existed, notwithstanding the Supreme Court's decision that in the future, Connecticut could resume the practice which it had, had abandoned, and that the plaintiffs argued that the, that the case is not moot, and should not be dismissed, albeit without prejudice. But the court decided against them, and that that's the decision that we're talking about as to whether it was appealable or, or not appealable. And that the, that it, although it didn't represent any kind of a final ruling in the case, I don't understand why. I don't believe that the fact that the court allowed the plaintiffs to return to say that they hadn't received what they were entitled to affects whether the case had effectively been, been closed. Because the same would be true if the court granted a final injunction. If the court granted a final injunction, that would be a judgment in the case. That would end the case, even though the plaintiffs are entitled to come back and point out to the court that the performance of what has been enjoined has not been properly done by the defendants. That wouldn't make the judgment not final. So, I'm not, I'm not sure where I would, would come out after hearing what Judge Walker says. But my impression was that the court granted a motion, which I thought was for summary judgment, without prejudice, to return, but nonetheless, to, to, to go no further in the case on a basis of finding that the case is moot, which the plaintiffs disagreed with, but the court rejected their argument. I know that my time is just before you answer that question, because I think this is a something that we're going to be discussing later. And I think it's important, I just want to throw in that in the conclusion of that decision, he just, he just said most of the plaintiff's motion for summary judgment, plaintiff's motion for summary judgment is denied. So, I didn't see any, any grant there. But why don't you answer Judge LaVallis? Thank you, Judge Walker. And I know my time has expired, Judge Bianco. May I? Yeah, sure. No, go ahead. Um, first of all, Judge LaVallis, Judge Walker is exactly right. It was our motion for summary judgment based upon, and understand, our motion for summary judgment was filed before we knew almost any of this. We had not been informed by the defendants of, even the statements of the public officials that formed the basis for the decision, Judge Bolden's decision below. We, my received the refunds that were issued by the Connecticut State Police Union. Indeed, what the situation was, was that shortly after Janice was decided, Judge Bolden sentenced to Magistrate Judge Fitzsimmons for settlement negotiations. We conducted those settlement negotiations, I believe, for exceeding six hours, um, in the courthouse. We, we, we reached, uh... Are you talking, are you talking about settlement, settlement discussions over attorney's fees, solely over attorney's fees, or over anything else? Over everything remaining in the case, including the refunds. All of this occurred well before the refunds were issued by the union to my clients. Indeed, it is, it is abundantly clear on the record, and I believe, um, that it is, uh, at page, Joint Appendix, page 256, Mr. Ment, representing the union below, specifically states that the refunds were calculated with interest at a rate agreed to in the settlement negotiations. Now, this is something we, we didn't know in a rural argument because we didn't know. I can't hear you. I can't hear him. Yeah, we lost, we lost your sound, uh, Mr. Young. We saw your gestures. Joe can't hear you. Is that better? Yes. Yeah. Could you start, could you repeat it again? I'm trying very hard not to read my brief with gestures. Um, the, the, uh, I'm not sure where I ended up, so let me go back just a little bit. All, these discussions occurred with Magistrate Judge Fitzsimmons and what was decide, what was, we reached a court on most of the substantive relief. We reached a court and, and the disputes were basically in, in terms of settlement two, one, the refund and the rate of interest to be paid on the refund. I believe Connecticut law allows up to 10% interest on, on prejudgment interest. We agreed to four and a half percent. That's how the, and that's how the union subsequently calculated the interest on the refunds it provided. We also had a substantial dispute on the issue of attorney's fees, not the entitlement, I would add. And I, I'm, I'm hesitant to go into the, the, the, um, substance of settling the negotiations, except for the fact that we have in the record Magistrate Judge Fitzsimmons emailed to the parties from, relating from Judge Bolden that he would have no compunction about, and I'm not, that's not the exact language, about adjudicating the amount of the attorney's fees. The, the presumption was always that plaintiffs, appellants were prevailing parties, offers were made, counter offers were proposed, and we could not reach a court on amount, on amount only. And that's where it was left when the plaintiffs were believing that we had not, there was, that the attorney's fees portion was to be part of a global settlement, which is why we moved for summary judgment, because we hadn't received the refunds as of the date we filed that motion. And that is, and we believe that's, that's clear on the record. So I would like to just turn, understanding that I'm well beyond my time, Judge Bianco, I, I hope you will indulge me to just allow me a few comments on the attorney's fees, since I may lose the mootness argument based on some of the comments. But I think Judge Walker makes a valid point, or reflects a point that we wish to, to make, which is rife within the finding of mootness is the determination by Judge Bolden that plaintiffs have received all of the substantive relief to which they are entitled, even if they don't get the declaratory judgment. It, and it is abundantly clear on this, on this record that Judge Bolden clearly erred when he declared the fee, the, the amount of the refunds to be unilateral. They were not. They were a negotiated interest rate. They, somewhere between the minimum... They weren't based upon, the key thing under Buchanan and other cases is that it has to be based upon some, you know, judgment of the court on the merits. It was not based upon any judgment and there was no consent decree or anything like that, whether it was a judicial imprimatur, right, or am I missing something? It may have been negotiated and there may have been a back and forth as you've described, but the bottom line is, I think under Buchanan, you need that some type of decision by the court or some type of court supervision of what was agreed to. Uh-oh, we've lost him again, if he's answering, and he's frozen. He didn't like my question. I'm trying to think of the answer, I guess, but we've lost you. He's still there, we just can't see him or hear him. I can see him. Oh, you can see him? Not moving. I see a frozen image. I see a frozen image, yeah. I don't know that he knows he's in trouble. Do we have his phone number? Does somebody have his phone number? Troy is contacting him right now, so I think what we'll do is we'll come back. Mr. Steigman and Ms. Kendall, we'll come back to your argument rather than just wait to see how long it takes to resolve this. We'll just move to the next argument, come back to you. The next argument is partially on submission, so it'll be fairly quick.